**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 05-1115 PCT DGC |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Francis Chischilly, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant Francis Chischilly has filed a motion to suppress inculpatory statements he made during an interview with law enforcement officers on September 14, 2005. Doc. #28. An evidentiary hearing was held on April 20, 2006. Three witnesses testified. Following the hearing, counsel for Defendant and the Government made oral arguments concerning the motion to suppress.

The motion, as expanded at the hearing, presents five issues for resolution by the Court: (1) whether Defendant's arrest for public intoxication on September 13, 2005 was supported by probable cause; (2) if the arrest was not lawful, whether the passage of time and other factors removed the taint of the unlawful arrest from Defendant's subsequent statements to law enforcement; (3) whether the FBI agent procured Defendant's continued detention on the morning of September 14, 2005, and, if so, whether the continued detention was supported by probable cause; (4) whether Defendant's statements to law enforcement officers during the September 14 interview were voluntary; and (5) whether the interview

should have been terminated when Defendant expressed his desire to speak with his mother who, in turn, was planning to talk to a lawyer. The Court will address each issue separately.

**I.      September 13, 2005 Arrest.**

Defendant was arrested on the evening of September 13, 2005, by Navajo Tribal Police Officer Alejandro Deya. Officer Deya arrested Defendant for public intoxication. The Court must resolve two issues: Did Officer Deya have a reasonable basis for believing Defendant was intoxicated, and did Officer Deya have a reasonable basis for believing Defendant was intoxicated in a public place?

Officer Deya had a reasonable basis for concluding Defendant was intoxicated. Officer Deya was dispatched to Defendant's house based on a call from FBI Agent Nicholas Manns. Agent Manns had arrived at the house for the purpose of questioning Defendant regarding the assault at issue in this case, and, upon seeing that Defendant appeared to be intoxicated, had called for a tribal police officer. Upon arriving at the house, Officer Deya detected the smell of alcohol and marijuana on Defendant's person and saw that Defendant had bloodshot eyes. Officer Deya asked Defendant to accompany him to the side of Officer Deya's patrol car and there conducted two field sobriety tests – a horizontal gaze test and a one-legged stand. Defendant failed both tests. His eyes jerked while attempting to follow the movement of a horizontal object and he could not balance himself with one foot raised six inches off the ground. From Defendant's appearance and his performance on these tests, Officer Deya reasonably concluded that Defendant was intoxicated.[1]

The second question is whether Defendant was intoxicated in a public place. The Navajo Tribal Code provides the following definition of a public place for purposes of public intoxication:

---

[1] Defense counsel suggest at the hearing that Officer Deya was at Defendant's property for only four or five minutes, implying that this was not long enough to develop probable cause. The Court concludes, however, that four minutes is long enough to observe Defendant, conduct two simple field sobriety tests, observe the surrounding area, and conclude that Defendant was intoxicated in public. Moreover, Officer Deya had made such arrests on many previous occasions and certainly understood what he was looking for.

- 2 -

> [A] place to which the public or a substantial group of persons has access and includes but is not limited to highways, schools, parks, places of business, playgrounds and hallways, lobbies and other portions of motels or hotels not constituting rooms or apartments designed for actual residence. A public place shall include the immediate area, both inside and outside a structure, wherein traditional Navajo religious practices, ceremonies, or services are being held.

Section 480, Title 17, Navajo Nation Code.

Officer Deya arrested Defendant at his mother's mobile home. The house was located on a parcel of property with two other mobile homes occupied by relatives. A wire fence enclosed the entire perimeter of the property. A gravel driveway entered the property through an open gate. A sign posted on one of the gate posts said "Private Property." Defendant was standing with his mother and Agent Manns outside the house and near some parked trucks when Officer Deya arrived.

Photographs placed in evidence show that the property is surrounded by other homes, is next to a business known as "Cool Runnings," and is near a major thoroughfare. Officer Deya testified that he is familiar with the area and routinely has seen people cross the wire fence that separated the property from Cool Runnings and an adjacent trailer court. He also testified that he has seen people congregate in the open space on the property near the home where Defendant was arrested. Agent Manns testified that he too is familiar with the area, has conducted surveillance of the adjacent trailer court on five or six different occasions, has seen juveniles crossing the wire fence onto Defendant's property on three to five occasions, and has seen 10 to 12 juveniles congregate in the open area on the property. Defendant's mother testified that there is a gate in the wire fence between her home and the Cool Runnings and trailer court properties.

Probable cause exists when the officer knows of "facts and circumstances 'sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see De Anda v. City of Long Beach*, 7 F.3d 1418, 1422 (9th Cir. 1993) (stating that the probable cause determination "depends on whether 'the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are

- 3 -

sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed'") (quoting *Dunaway v. New York*, 442 U.S. 200, 208 n.8 (1979)). The Court concludes that Officer Deya had reasonable grounds for believing that Defendant had committed the offense of public intoxication. Defendant's appearance and his failure of the field sobriety tests provided reasonable grounds for believing he was intoxicated. He was found in a residential area, on property readily accessible from the road and from a nearby business and trailer court, within plain view of surrounding houses. The gate on the driveway was not closed. Officer Deya previously had observed individuals crossing fences into and congregating on the property, as had Agent Manns. The Court finds that Officer Deya had a reasonable basis for concluding not only that Defendant was intoxicated, but also that the property on which he was found was "a place to which the public or a substantial group of persons has access." Section 480, Title 17, Navajo Nation Code. The arrest, therefore, was supported by probable cause.[2]

**II.     If the Arrest was Unlawful, was the Taint Removed*?***

Even if the arrest of Defendant for public intoxication lacked probable cause, the Court concludes that the unlawful arrest did not taint the statements made by Defendant to law enforcement officers the following day. When inculpatory statements would not have been made but for an unlawful arrest, courts must ask whether circumstances occurring between the arrest and the statements sufficiently attenuate the statements so as to remove any taint from the unlawful arrest. The Supreme Court has instructed that three factors should be considered: (1) the time between the illegality and the statements, (2) the presence

---

[2] The Court also notes that the offence of public intoxication includes a component of concern for the intoxicated person's welfare. Section 488 of the Navajo Nation Code defines the offense as intoxication to "the degree that he . . . is unable to care for . . . his own safety." Doc. #28 at 8. Officer Deya testified that he was concerned about leaving Defendant in his obviously intoxicated state given the accessible nature of the property and the proximity of a major thoroughfare. Agent Manns testified that Defendant had not been at the house earlier in the day, and that Defendant's mother had called Agent Manns when he returned, suggesting Defendant had become intoxicated away from the residence.

- 4 -

of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975). The Ninth Circuit has indicated that the third factor is "particularly" important. *United States v. Perez-Esparza*, 609 F.2d 1284, 1289 (9th Cir. 1980).

### A. Passage of Time.

Defendant was held overnight at the Navajo tribal jail due to his arrest for public intoxication. Defendant was interviewed at the jail by Agent Manns and Officer Boye the next morning, approximately thirteen hours after his arrest, when he was sober and able to understand the conversation. Although this amount of time is not alone sufficient to conclude that there was no causal connection between the arrest and Defendant's statements, other factors lead the Court to this conclusion.

### B. Intervening Circumstances.

Between the time of his arrest and the time of his interview, Defendant regained his sobriety. Defendant understood that he had been arrested for public intoxication, not the offense on which he was questioned by Agent Manns the next morning. Although Agent Manns was present when the arrest was made the night before, he did not arrest Defendant. Navajo Tribal Police arrested Defendant for the unfortunately-common offense of public intoxication. Officer Deya testified that he makes such arrests daily and that he had made four such arrests on September 13, 2005, before his arrest of Defendant. Defendant's mother testified that she is familiar with intoxication because it is common on the reservation. Moreover, Defendant understood such arrests from his own prior experience. Defendant's booking record, introduced into evidence by the defense at the hearing, showed that Defendant had been arrested for public intoxication only four days earlier, held overnight at the jail, and released the following morning when he was sober.

The following morning, Agent Manns told Defendant why he wanted to talk – to discuss the assault at issue in this case. He fully apprized Defendant's of his rights, confirmed that Defendant understood them and was willing to talk, and conducted the interview in a non-coercive manner. Defendant argued in his motion that Agent Manns

1  promised Defendant he would be released from jail if he cooperated in the interview, but the
2  hearing produced no evidence to support this claim. Agent Manns testified that he made no
3  such promise, and the Court found his testimony credible. Defendant understood from his
4  previous personal experience that those arrested for public intoxication were released once
5  sober. Thus, the interview was separate from the public intoxication charge for which
6  Defendant was arrested and jailed, a distinction the Court finds that Defendant understood.
7  More will be said below on the nature of the interview.

8  The Court concludes that Defendant's intervening night in the jail, his sobriety the
9  next morning, his familiarity with jail procedures, Agent Mann's explanation of the reasons
10 for the interview, Agent Mann's explanation of Defendant's rights, and Defendant's knowing
11 waiver of those rights and consent to interview eliminated any risk that Defendant's
12 statements during the interview were the result of the prior night's arrest.

13 **C.     Purpose and Flagrancy of the Official Misconduct.**

14 As already noted, the Ninth Circuit has stated that this factor is "particularly"
15 important. *Perez-Esparza*, 609 F.2d at 1289. The Court concluded above that Defendant's
16 arrest for public intoxication was supported by probable cause. If it was not, the Court finds
17 that it was a close question and that Officer Deya's arrest cannot be viewed as either flagrant
18 or for an improper purpose. The Court found Officer Deya's testimony to be credible and
19 concludes that he was acting in good faith when he arrested Defendant for the crime of public
20 intoxication.

21 The Court finds no basis for concluding that the arrest of Defendant was a coordinated
22 attempt to subject Defendant to an in-custody interrogation concerning this case. Officer
23 Deya testified that he made an independent assessment of Defendant's public intoxication
24 and arrested Defendant on that basis, just as he had arrested numerous other individuals
25 during his law enforcement career, including four other individuals the same day. Officer
26 Deya did not know the purpose of Agent Manns' visit to Defendant's house, was not told by
27 Agent Manns to arrest Defendant, and did not make the arrest in order to facilitate Agent
28

Manns' interview. Likewise, Agent Manns testified that he did not direct Officer Deya to arrest Defendant.[3]

The Court concludes that the arrest was not flagrant or for an improper purpose. The Court can find no need in this case to deter improper law enforcement conduct. Given this finding and the other considerations addressed above, the Court concludes that Defendant's statements to Agent Manns were not tainted by his arrest for public intoxication.

**III.    Probable Cause on the Morning of September 14, 2005.**

During the hearing, Defendant argued that Agent Manns' request that the tribal jail hold Defendant on the morning of September 14, 2005, constituted a separate act of restraint. Even if true, the Court concludes that Agent Manns had probable cause.

Prior to September 13, 2005, Agent Manns had learned that the juvenile victim of the assault had specifically identified Defendant as one of his assailants. Agent Manns had also personally interviewed Myron David Wilson, the co-assailant of the victim. Wilson had also identified Defendant as participating in the assault. These two eyewitness identifications provided Agent Manns with a reasonable basis for believing that Defendant had participated in the assault. Agent Manns thus had probable cause to detain and question Defendant on the morning of September 14, 2005.

**IV.    Voluntariness of the Confession.**

Defendant argues that Agent Manns applied psychological coercion in obtaining Defendant's statement. Specifically, Defendant argues that he was young (18 years old), frightened, had just spent a long night in jail, and was interviewed under circumstances suggesting that he could only be released from jail if he cooperated. As indicated above, the

---

[3] Defendant's mother testified that Agent Manns arrested Defendant and, upon the arrival of Officer Deya, placed Defendant in Officer Deya's car. This testimony contradicts the testimony of both Officer Deya and Agent Manns, testimony the Court found credible. Moreover, Defendant's mother's testimony concerning the arrest was inaccurate in other respects. She testified, for example, that Officer Deya and a second officer arrived in separate patrol cars and that the other officer left immediately, when in fact the second officer was a trainee riding in Officer Deya's car that night.

- 7 -

1  Court cannot accept this view of the interview. Defendant was arrested and jailed for public
2  intoxication. He had been arrested, jailed, and released on just such charges only four days
3  earlier. Defendant understood from this experience that tribal practices – as confirmed by
4  the testimony of Officer Deya at the hearing – include releasing intoxicated persons the
5  following morning when they were sober.

6  Agent Manns explained his purpose for speaking with Defendant, explained
7  Defendant's right to remain silent, explained Defendant's right to an attorney, and confirmed
8  that Defendant understood each of these rights. Defendant not only signed a written
9  statement acknowledging these rights, but initialed each of the specific rights he had
10 discussed with Agent Manns to show he understood them.

11 Although Agent Manns stated that he would leave the cell and terminate the interview
12 if Defendant desired to speak with his mother or an attorney, the Court does not find this
13 statement to be psychologically coercive. As noted above, Defendant understood that the
14 tribal jail would release him from custody on the public intoxication charge. Agent Manns'
15 suggestion that the interview might be terminated cannot be viewed as suggesting coercively
16 that Defendant would somehow remain imprisoned.

17 A confession is involuntary if circumstances are sufficiently coercive to overbear the
18 will of the defendant. *United States v. Leon-Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988).
19 Such circumstances did not exist in this case. In addition to the facts discussed above,
20 evidence presented at the hearing demonstrated that the interview was cordial, Defendant was
21 cooperative, Agent Manns and Officer Boye were not armed, threats were not made, physical
22 coercion was not used, and Defendant's rights were understood and waived.

23 **V.   Defendant's Mention Of Counsel.**

24 At the beginning of the interview, Defendant stated that he wanted to speak with his
25 mother because his mother was going to talk to a lawyer. Agent Manns confirmed that
26 Defendant had the right to speak to an attorney and stated that he would leave if Defendant
27 wanted to speak with either his mother or a lawyer. Defendant then indicated that he wanted
28 to proceed with the interview. He signed the statement that he understood his right to

- 8 -

1 counsel and was voluntarily waiving it. Agent Manns took the extra step of writing the circumstances of Defendant's request to speak with his mother on the bottom of the consent form, as well as Defendant's affirmative statement that he wanted to proceed with the interview without first speaking to a lawyer. Defendant initialed these handwritten statements to confirm their accuracy.

The Court finds that Defendant did not request counsel and was not denied a right to counsel. Although Defendant expressed an initial interest in speaking with his mother, he promptly agreed to proceed with the interview, was explained and understood his right to counsel, and knowingly waived that right. Defendant does not claim that he subsequently expressed any interest in speaking with an attorney.[4]

**VI. Conclusion.**

The Court concludes that Defendant's arrest on September 13, 2005, was supported by probable cause to believe he had committed the offense of public intoxication, that his interview on September 14, 2005, was sufficiently attenuated so as not to be tainted by the prior evening's arrest (if unlawful), that Agent Manns had probable cause for requesting that Defendant be held at the jail on the morning of September 14, 2005, that Defendant's statements to Agent Manns that morning were voluntary, and that Defendant was not denied his right to speak with counsel. Defendant's motion to suppress will therefore be denied.

---

[4] Defendant's mother testified that she asked Agent Manns about her son's need for an attorney when her son was arrested on September 13, 2005. Agent Manns testified that she asked him about a lawyer when he returned to the house to arrest Defendant on the present charges in October 2005, but that she did not mention a lawyer on September 13. The Court finds Agent Mann's testimony to be credible on this point.

1    **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress (Doc. #28) is
2 **denied**.
3    DATED this 25th day of April, 2006.

_____
David G. Campbell
United States District Judge